UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Darrell D. Prouty,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DHS, MSOP of the State of Minnesota,<br><br>　　　　Defendants. | Case No. 21-cv-01349 (SRN/TNL)<br><br><br>**ORDER** |

Darrell D. Prouty, MSOP Regional Treatment Facility, 1111 Highway 73 A-105, Moose Lake, MN 55767, Pro Se.

SUSAN RICHARD NELSON, United States District Judge

　　This matter is before the Court pursuant to 28 U.S.C. § 1915(e)(2), which permits the Court to review the legal sufficiency of a civil complaint against the government filed by a party proceeding *in forma pauperis*. For the reasons that follow, the Court finds that Plaintiff Darrell Prouty's Complaint [Doc. No. 1] and Amended Complaint [Doc. No. 3] fail to state a claim upon which relief may be granted. Accordingly, the Complaint and Amended Complaint are **DISMISSED without prejudice**, Prouty's Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application") [Doc. No. 2] is **DENIED as moot**, and his Motion for a Temporary Restraining Order [Doc. Nos. 4 & 5] is **DENIED**.

I.   **BACKGROUND**

Prouty is civilly committed to the Minnesota Sex Offender Program ("MSOP"). In this action, Prouty alleges that MSOP officials have failed to adequately respond to the dangers posed by one of Prouty's fellow clients, R.H.[1] Prouty's eleven-page Complaint alleges that R.H.'s behavior toward others is dangerous, and that R.H.'s behavioral and mental health issues cannot be adequately managed at MSOP. (Compl. at 2-3, 8-9.) More specifically, Prouty alleges that R.H. "has continually exhibited terroristic activities, as well as exhibited ongoing non self restraint nor not under any total self control, to the point of inflicting physical damage as well as verbal physical threats to everyone's health and welfare." (*Id.* at 2 (all-capital font omitted) (typographical errors corrected).) He further alleges that R.H. has "continually" made verbal threats to "use . . . instruments" for the "explicit purpose" of assaulting "several people." (*Id.* at 3 (same).) Prouty asserts that Deborah Barron, a clinical supervisor, and Kristy Wagner, a unit director, have allowed R.H.'s behavior to continue by implementing a program that allows him to stay in Prouty's unit and to act out. (*Id.*)

In addition to his complaints about R.H., Prouty alleges that MSOP has never prioritized the welfare of its clients, and has not provided conditions conducive to rehabilitation. (*Id.* at 6.) For example, Prouty alleges that a client who has not been vaccinated against the COVID-19 virus was allowed to live in his unit, allegedly putting

---

[1] Prouty does not clearly identify the allegedly dangerous MSOP client in his filings. The Court infers, however, that Prouty's allegations relate to a client whose initials are R.H., and the Court will therefore use those initials when referring to the dangerous client. (*See, e.g.*, Letter to Magistrate Judge [Doc. No. 4], at 4.)

everyone at risk of contracting COVID-19. (*Id.*) Prouty further characterizes the conditions at MSOP as an "internment reinvented Nazi concentration camp for the explicit purpose and only sole purpose of a lifetime confinement with the end result of release only by and/or within a medical examiner's body bag." (*Id.* at 7 (all-capital font omitted) (typographical errors corrected).)

Prouty primarily seeks two forms of declaratory and injunctive relief against MSOP and the Minnesota Department of Human Services ("DHS"). First, he seeks an order directing MSOP to transfer R.H. to a different facility. (*Id.* at 8.) Second, he seeks an order requiring Defendants to terminate the employment of fifteen individuals, ranging from the DHS Commissioner to members of MSOP's security staff. (*Id.* at 9-11.) In several places, Prouty also passingly requests that he be released from MSOP's custody.

After filing his Complaint and IFP Application, Prouty filed a twenty-four-page Amended Complaint.[2] Like the Complaint, the gravamen of the Amended Complaint is that Prouty is concerned about a dangerous client who resides in his unit, that he believes the individual should be relocated to another facility, and that certain state officials should be terminated for their handling of the situation. He further emphasizes that the conditions at MSOP are not conducive to rehabilitation or treatment, and that he believes adjustments

---

[2] Although the document was docketed as a "brief," the first line of the document characterizes it as "My amendment to original proceeding and/or original complaint." (Am. Compl. at 1 (all-capital font omitted).) Because the document was filed within 21 days of Prouty's Complaint, the Court will treat it as an Amended Complaint and the operative pleading in this matter. *See* Fed. R. Civ. P. 15(a)(1) (permitting a plaintiff to amend his complaint once as a matter of course).

3

should be made or he should be released in order to better facilitate his treatment. The Amended Complaint shares the Complaint's general allegations regarding R.H.'s destructive nature and "terroristic" activities, but also includes two allegations that are somewhat more concrete. Namely, Prouty alleges that "persons . . . continue to be a threat to themselves as well as to all others intentionally and maliciously destroy State of Minnesota property, walk around with sharpened objects to do physical harm with the intent to murder." (Am. Compl. at 5 (all-capital font omitted) (typographical errors corrected).) And Prouty alleges that R.H. has stalked other MSOP clients, and has "opened several persons' windowed doors." (*Id.* at 13, 19 (same).)

This is not the first civil rights lawsuit Prouty has filed in this Court. In *Prouty v. DHS et al.*, 20-cv-00928 (WMW/DTS) (D. Minn. 2020), Prouty sued the DHS, MSOP, the State of Minnesota, and approximately ninety individual employees of those entities. Prouty made a variety of broad and general allegations about the adequacy of MSOP's programs, and he characterized MSOP as a "reinvented Nazi concentration/internment camp." *Id.*, Doc. No. 31, at 4. The Court dismissed Prouty's claims against the state entities for lack of jurisdiction, and dismissed as frivolous Prouty's claims against the individual defendants. *Id.*, Doc. No. 32. Prouty later filed another civil rights lawsuit against DHS, MSOP, and three individual defendants. *Prouty v. DHS et al.*, 21-cv-00058 (PAM/LIB) (D. Minn. 2021). The Court, reviewing Prouty's Complaint under 28 U.S.C. § 1915(e), dismissed the Complaint for failure to state a claim upon which relief may be granted. *Id.*, Doc. No. 4.

## II.      DISCUSSION

Under the Prison Litigation Reform Act, the Court may examine the legal sufficiency of a complaint against a government entity filed by a party proceeding *in forma pauperis*. 28 U.S.C. § 1915(e). Where the complaint fails to state a claim upon which relief may be granted, the court must dismiss the action. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam); *Carter v. Schafer*, 273 Fed. App'x 581, 582 (8th Cir. 2008) (per curiam) ("[T]he provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service."). In reviewing whether a complaint states a claim upon which relief may be granted, the Court must accept the complaint's factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the complaint's factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing the sufficiency of the complaint, the Court may disregard legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

Because Prouty proceeds pro se, the Court liberally construes his pleadings. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). But the Court is not required to assume facts not pled, even if doing so would strengthen the pleadings. *Id.* at 915. Rather, to liberally construe a pro se plaintiff's complaint means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should

construe the complaint in a way that permits a layperson's claim to be considered in the proper legal framework." *Id.*

Liberally construing Prouty's Amended Complaint, the Court discerns two core alleged grounds for relief. First, Prouty alleges that MSOP has ignored the dangers posed by R.H., creating a risk that R.H. will harm Prouty. In connection with this claim, Prouty filed two letters to the magistrate judge seeking "emergency type removal [of R.H.] to be effective immediately." (*See* Letters to Magistrate Judge [Doc. Nos. 4 & 5].) The Court will treat these letters as a Motion for a Temporary Restraining Order ("TRO"). Second, Prouty appears to assert a general challenge to the quality of treatment offered at MSOP, and the conditions at MSOP's Moose Lake facility. The Court will consider these two bases for relief in turn.

### A.     Removal of the Dangerous Client

Prouty's Amended Complaint, liberally construed, appears to assert a Fourteenth Amendment failure-to-protect claim. This Court analyzes failure-to-protect claims brought by MSOP clients "under the same deliberate indifference standard that is applied to Eighth Amendment claims by prisoners." *Miles v. Hartlieb*, No. 19-CV-1567 (JNE/KMM), 2020 WL 2527103, at *4 (D. Minn. Apr. 6, 2020), *R&R adopted*, No. 19-CV-1567 (JNE/KMM), 2020 WL 2526200 (D. Minn. May 18, 2020) (citation omitted). It is a violation of the Eighth Amendment for a prison official (or an employee at a state civil commitment facility) to be deliberately indifferent "to the need to protect [a client] from a substantial risk of harm from other [clients]." *Id.* (quotation omitted). A failure-to-protect claim has two elements: (1) viewed objectively, the alleged failure to protect must cause the

plaintiff's confinement to be under "conditions posing a substantial risk of serious harm"; and (2) the defendants must have been aware of the risk, yet failed to respond reasonably to it. *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010) (quotation omitted).

The Court finds that Prouty has not plausibly alleged that R.H.'s conduct posed a substantial risk of serious harm to Prouty. None of Prouty's filings make any particularized allegations about R.H.'s conduct toward him. Instead, his pleadings are largely composed of general and conclusory allegations. For example, Prouty alleges that R.H. inflicted "physical damage as well as verbal physical threats to everyone's health and welfare," that R.H. "continually" made verbal threats to "use . . . instruments" for the "explicit purpose" of assaulting "several people," and that R.H. "place[s] all of us in the highest risk of physical assault as well as . . . immediate danger of being murdered." (Compl. at 2 (all-capital font omitted) (typographical errors corrected); Am. Compl. at 6 (same).) Prouty's pleadings do not identify any specific threats made by R.H. to Prouty, nor does Prouty specify how R.H. has physically harmed anyone or placed anyone in immediate danger. To be sure, the Amended Complaint does allege that "persons . . . walk around with sharpened objects to do physical harm with the intent to murder," and that R.H. has stalked other MSOP clients and has "opened several persons' windowed doors." (Am. Compl. at 5, 13, 19 (same).) But Prouty does not indicate whether R.H. is among the "persons" who walk around with sharpened objects, and does not allege that R.H. has threatened Prouty with such objects. Nor does Prouty allege that R.H. has stalked him, or opened the door to his cell. Although the Court construes Prouty's pleadings liberally, it is not required to assume facts not pled. *See Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).

7

In short, Prouty does not allege specific facts supporting his conclusory assertion that he is endangered by R.H.'s behavior. Accordingly, the Court finds that Prouty has not plausibly alleged that R.H.'s conduct "pos[es] a substantial risk of serious harm,"[3] and dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) is appropriate.

Relatedly, the Court finds that Prouty is not entitled to a TRO. "A TRO is an extraordinary equitable remedy, and the movant bears the burden of establishing its propriety." *Life Time Fitness, Inc. v. DeCelles*, 854 F. Supp. 2d 690, 694–95 (D. Minn. 2012) (citing *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). The standard applicable to a motion for a TRO is the same as a motion for a preliminary injunction. *See id.* Namely, the Court must consider "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.*

As explained above, Prouty has not plausibly alleged that R.H. poses a substantial risk of serious harm to him. Consequently, Prouty has not demonstrated either a threat of irreparable harm or a probability of success on the merits of his failure-to-protect claim.

---

[3] Because the Court finds that Prouty has not plausibly alleged the first element of his failure-to-protect claim, it need not consider whether he has plausibly alleged that Defendants were aware of R.H.'s conduct yet unreasonably failed to respond to it.

Insofar as Prouty seeks an injunction directing Defendants to remove R.H. from Prouty's living unit and to terminate numerous MSOP employees, the injunction sought would impose a significant burden on Defendants—and conflict with the public interest—by interfering with MSOP's ability to manage its civil detainees and make its own personnel decisions. *See Kendrick v. Faust*, 2009 WL 1972249, at *2 (E.D. Ark. 2009) (declining a request for injunctive relief that sought termination of prison employees because requests for injunctive relief in the prison context "must always be viewed with great caution," and the termination of prison employees is a matter "to be decided by prison personnel, not the courts"). Because none of the *Dataphase* factors favors a granting a TRO here, the Court denies Prouty's motion.

      **B.**    **Adequacy of Treatment at MSOP**

The Court next considers Prouty's allegations concerning the quality of treatment offered at MSOP. These allegations, too, are insufficiently detailed to raise a plausible right to relief. Prouty's sweeping allegations that MSOP does not provide adequate resources for rehabilitation or an environment conducive to rehabilitation, and his allegation that conditions at MSOP are comparable to a Nazi concentration camp, are conclusory. Prouty does not plead specific facts demonstrating the alleged deficiencies in MSOP's programs and facilities, let alone facts that raise a legal right to relief. Notably, Prouty has previously asserted similar claims against Defendants, which this Court dismissed. *See Prouty v. DHS et al.*, 20-cv-0928, Doc. No. 31 (WMW/DTS) (D. Minn. 2020). And, to the extent Prouty seeks release from MSOP as a form of relief, he cannot do so in a civil lawsuit under 42 U.S.C. § 1983. *Carter v. Bickhaus*, 142 F. App'x 937, 938 (8th Cir. 2005) ("As for Carter's

9

request for release, we agree with the district court that such relief is not available under 42 U.S.C. § 1983, but is properly sought in a habeas corpus petition after exhaustion of state remedies.").[4]

### III. CONCLUSION

For the foregoing reasons, and based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Complaint [Doc. No. 1] and Amended Complaint [Doc. No. 3] are **DISMISSED without prejudice**;

2. Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs [Doc. No. 2] is **DENIED as moot**; and

3. Plaintiff's Motion for a Temporary Restraining Order [Doc. Nos. 4 & 5] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 20, 2021

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge

---

[4] Even if the Court were to construe Prouty's filings as a petition for habeas corpus, it cannot discern from this record whether Prouty has exhausted state procedures to challenge his civil commitment, as required to seek habeas relief.